### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DALE D. LILES, )<br>)<br>Appellant, )<br>)<br>v. )<br>)<br>DEPARTMENT OF THE NAVY )<br>BOARD FOR CORRECTION OF )<br>NAVAL RECORDS and CARLOS )<br>DEL TORO, SECRETARY OF THE )<br>NAVY, )<br>)<br>Appellees. ) | Case No. CIV-21-1011-SLP |

### **O R D E R**

Appellant David D. Liles brings this action for judicial review of the decision by the Department of the Navy Board for Correction of Naval Records denying his request for recharacterization of his "Other Than Honorable" discharge. *See* Second Am. App. [Doc. No. 11]. Pursuant to the Scheduling Order [Doc. No. 13], Mr. Liles submitted a "Brief in Support of Overturning Board for Correction of Naval Records' Discharge Upgrade Decision as an Arbitrary and Capricious Final Administrative Action" [Doc. No. 21]. Appellees, Department of the Navy Board for Correction of Naval Records (the Board) and Carlos Del Torro, Secretary of the Navy (the Secretary) have responded [Doc. No. 27], and Mr. Liles has replied [Doc. No. 29].[1] The matter is fully briefed and ready for determination.

---

[1] The Court refers to Mr. Liles as the "Appellant" and the Board and Secretary as "Appellees" consistent with the terminology utilized by the parties throughout this action.

**I.     Factual Background**

Mr. Liles enlisted in the Marine Corps in May of 1978 and was sent to Atsugi NAF in Japan in October that same year. In December 1978, Mr. Liles was formally counseled regarding his attitude and performance of duty. *See* Administrative Record (A.R.) [Doc. No. 19] at 41.[2] Shortly thereafter, Mr. Liles was written up for stealing a stereo found underneath his bunk between February 23 and 25, 1979. *Id.* at 91. He was formerly counseled again on March 20, 1979 regarding his hostility toward authority, frequent involvement in petty violations, and for having consumed alcohol in unauthorized areas. *Id.* at 46. Less than a week later, Mr. Liles was found to have willfully destroyed military property by throwing a scrub brush at a window and causing it to break. *Id.* at 91.[3]

On May 24, 1979, Mr. Liles requested to be discharged for the good of the service to avoid trial by special court martial. *Id.* at 46. Mr. Liles' discharge request was denied, and he pleaded guilty to larceny of the stereo six days later. *Id.* at 42-43, 46. He was also convicted of neglectful destruction of property. *Id.* at 42-43. For those convictions, Mr. Liles was sentenced to two months of confinement with hard labor, in addition to forfeiture of pay, paygrade reduction, and a bad conduct discharge from naval service. *Id.* at 43. Nevertheless, in June of 1979, the convening authority suspended the bad conduct discharge and pay forfeiture. *Id.* at 151.

---

[2] Citations to the Administrative Record utilize the original pagination, but all other citations to the record reference the Court's CM/ECF pagination.

[3] In his Application, Mr. Liles stated that he began being bullied and harassed by fellow Marines after he arrived in Japan. *Id.* at 21. He specifically recounted an incident where other Marines cornered him and tried to put him in an ice chest, but they were unable to do so because a sergeant intervened. *Id.*

After his convictions and confinement, Mr. Liles was subject to two non-judicial punishments for being found with alcohol in his room and disobeying a lawful order. *Id.* at 46-47. In December 1979, he was transferred to North Carolina, as was his wife whom he met while in Japan. *See id.* at 22, 146. Shortly thereafter, Mr. Liles was issued a third non-judicial punishment for disobeying lawful orders by not reporting to evening colors detail. *Id.* at 57. Mr. Liles received reenlistment counseling in June of 1980, at which time it was recommended that he not reenlist due to his disciplinary record. *Id.* at 94.

On February 2, 1981, Mr. Liles joined a new assignment with the India Company 3d Battalion, 8th Marines 2d Marine Division at Camp Lejune in North Carolina. *Id.* at 150. He was evaluated for insomnia around the same time. *See id.* at 2. A naval medical officer diagnosed him with a "situational adjustment reaction with strong separation anxiety" in response to two reported stressors: reporting to a new command and his wife's pregnancy. *Id.* The medical officer recommended that Mr. Liles receive a psychiatric evaluation, but he did not attend that appointment.[4] *Id.*

On February 26, 1981, Mr. Liles' wife had a miscarriage. *Id.* at 14, 16, 22. Mr. Liles did not report on base, which resulted in an unauthorized absence. *See id.* at 48. He was charged with disobedience of a lawful order and leaving his post before being properly relieved. *See id.* Mr. Liles was subsequently convicted by summary court martial. *See id.* at 10, 48. He waived representation by counsel during those proceedings. *Id.* at 48.

---

[4] Mr. Liles later sought a psychiatric evaluation in June of 1981, after his other than honorable discharge had begun administratively processing. *See id.* at 152.

On May 19, 1981, Mr. Liles was recommended for other than honorable discharge "by reason of misconduct due to frequent involvement with military authorities[.]" *Id.* at 93. In his discharge paperwork, Mr. Liles' commanding officer opined that he would "do whatever was necessary to obtain his discharge" and would "no doubt continue his disruptive behavior, eventually incurring a punitive discharge." *Id.* at 49. Mr. Liles was officially discharged for other than honorable service in July 1981. *Id.* at 2.

## II.     Procedural History

On June 4, 2018, the Board received Mr. Liles' Application for review of his discharge characterization. *Id.* at 1. His Application stated he was unjustly discharged as a result of the stolen stereo and the unauthorized absence following his wife's miscarriage. *Id.* at 14-15. As to the stolen stereo, Mr. Liles stated he was "set up" by other Marines who did not like him. *Id.* at 14. He further stated the charges associated with his unauthorized absence the day of his wife's miscarriage were unjust because he was having "a difficult time emotionally," "emotionally unstable," and "not mentally well." *Id.* at 15.

On March 19, 2019, the Board requested Mr. Liles provide additional materials or documentation that could support his allegations of mental health conditions. *Id.* at 25. In response, Mr. Liles provided a Veteran's Disability Report from a private psychologist named Dr. Raymond Fuchs. *Id.* at 27. Dr. Fuchs diagnosed Mr. Liles with Specified Trauma and Stress-Related Disorder, Generalized Anxiety Disorder, Social Anxiety, and Persistent Depressive Disorder (Dysthymia). *Id.* at 35.

4

Around the same time, a Navy psychiatrist, Lieutenant Molly Summers, issued an Advisory Opinion based on a review of Mr. Liles' military records.[5] *Id.* at 2. She noted that Mr. Liles likely experienced stress as a result of his wife's miscarriage, and that the in-service medical records reflected emotional difficulties such as temporary adjustment reactions and characterological traits. *Id.* at 3. She concluded it was "difficult to consider how [Mr. Liles'] misconduct and poor performance, which varied over the course of more than a year, should be attributed to a mental health condition" absent post-service medical records diagnosing a mental health condition and linking that to Mr. Liles' behavior. *Id.*

Lieutenant Summers issued an Updated Advisory Opinion after receiving Dr. Fuchs' report. *Id.* at 8. She concluded Mr. Liles has a trauma related mental health diagnosis attributable to his military service, but that there was no clinical information submitted regarding his misconduct while in military service. *See id.* She noted Mr. Liles' final conviction in 1981 could be considered related to a trauma-related mental health condition after his wife's miscarriage, but all the prior misconduct (formal counseling on three occasions, two non-judicial punishments, and one special court martial conviction) occurred prior to the miscarriage.[6] *See id.* Based on her findings, Lieutenant Summers opined that the majority of Mr. Liles' misconduct could not be attributed to a trauma-related mental health condition. *Id.*

---

[5] At that time, Lieutenant Summers did not reference Dr. Fuchs' report and stated that Mr. Liles had not submitted any evidence of a mental health condition. *See id.* at 2-3.

[6] She also noted Mr. Liles experienced "characterological traits" while in service that "likely interfered with his ability to realistically consider his own behavioral role in the disciplinary proceedings." *Id.*

5

On May 30, 2019, Dr. Fuchs issued a follow-up report. *Id.* at 5. In that second report, Dr. Fuchs stated that Mr. Liles' diagnoses, "while possibly less than PTSD," could have been chronic or ongoing conditions. *See id.* at 5-6. Dr. Fuchs also indicated that adjustment disorders like Mr. Liles was diagnosed with in February 1981 are "clustered in the traumatic reaction disorders, along with PTSD." *Id.* at 6. Dr. Fuchs expressed his agreement with the 1981 diagnoses and stated: "emphasis that such can be considered one of the trauma reactions needs to be noted." *Id.*

On September 10, 2019, the Board issued a four-page letter denying Mr. Liles' Application. *Id.* at 9. The letter stated that the Board considered Mr. Liles' Application and material in support thereof; relevant portions of his military record; Dr. Fuchs' reports; the Advisory Opinions of Lieutenant Summers; and all applicable statutes, regulations, and policies. *Id.* The Board thoroughly summarized the facts and procedural history associated with Mr. Liles' Application. *Id.* at 9-11. The Board noted it "carefully weighed all potentially mitigating factors" including Mr. Liles' assertions that he did not steal any stereo equipment; that he was "set up" by other Marines that did not like him; that he was physically and emotionally attacked and bullied while living in the barracks; and the unjust nature of the charges brought after his wife's miscarriage. *Id.* at 11. The Board also discussed Dr. Fuchs' evaluation. *Id.* at 10-11.

The Board ultimately concluded there was insufficient evidence to attribute Mr. Liles' misconduct to a mental health condition. *Id.* at 11. The Board also determined the circumstances involving Mr. Liles' wife's miscarriage did not warrant a change in his discharge characterization due to the multiple instances of prior misconduct, in addition to

6

the fact that he was counseled on the consequences of further misconduct. *Id.* The three-member Board was unanimous in its decision. *Id.* at 38-40.

Mr. Liles filed a Request for Reconsideration on May 8, 2020. *Id.* at 61. He reiterated the same mitigating factors leading to his discharge. *See id.* He stated the Board recognized his diagnosis as situational adjustment reaction with strong separation anxiety, "which seems very similar to [PTSD]." *Id.* He also stated possible "exacerbation" of existing conditions was not considered. *Id.* Mr. Liles indicated he was requesting an upgrade in his discharge classification to be considered for VA disability. *Id.*

Mr. Liles attached a letter from Dr. Fuchs in connection with his reconsideration request. *Id.* at 62. There, Dr. Fuchs discussed Mr. Liles' 1981 diagnosis of "seasonal adjustment reaction with strong separation anxiety," emphasizing that such disorders can present as "chronic," meaning lasting beyond six months. *Id.* Dr. Fuchs opined that the failure of Mr. Liles' symptoms to abate suggested he had a condition related to his "circumstances and stress-related disorders as early as 1981." *Id.* Dr. Fuchs disputed the Board's conclusion and the opinions of Lieutenant Summers, indicating his belief that they did not fully consider the extent to which Mr. Liles' assault and harassment by other Marines (among other things) may have caused his trauma related conditions, or that those conditions could have been preexisting. *See id.* at 62-63.

On December 21, 2020, the Board unanimously denied Mr. Liles' request for reconsideration. *Id.* at 53-54. The Board documented its actions in its docket and issued a second letter of denial dated January 21, 2021. *Id.* at 51-54. The Board discussed the contentions in Mr. Liles' reconsideration request, in addition to the response from Dr.

7

Fuchs. *Id.* at 51. The Board also stated that it considered the 2018 Secretary of Defense Memo on Guidance to Military Discharge Review Boards and Boards for the Correction of Miliary / Naval Records Regarding Equity, Injustice, or Clemency Determinations (the 2018 Memo) as relevant guidance. *Id.* The Board ultimately concluded Mr. Liles' service characterization was without error or injustice, expressly basing its decision on the 2018 Memo. *Id.* Mr. Liles then filed this action for judicial review.

### III.     Governing Standard

Decisions of the Board for the Correction of Naval Records "are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence." *Chappell v. Wallace*, 462 U.S. 296, 303 (1983); *see also Charlton v. Donley*, 846 F. Supp. 2d 76, 84 (D.D.C. 2012) ("As in the case of other federal agencies," a court may overturn the decision of a board for the correction of military records "only if it is either 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' or not supported by substantial evidence in the record." (quoting and citing 5 U.S.C. § 706(2)(A), (E)). Mr. Liles contends the Board's decision was arbitrary and capricious. *See* Sec. Am. App. [Doc. No. 11]; *see also* Brief [Doc. No. 21].

Generally, "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n. of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). At the same time, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice

made.'" *Id.* (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

An agency's decision is arbitrary and capricious if it:

> (1) entirely failed to consider an important aspect of the problem, (2) offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise, (3) failed to base its decision on consideration of the relevant factors, or (4) made a clear error of judgment.

*WildEarth Guardians v. United States Bureau of Land Mgmt.*, 870 F.3d 1222, 1233 (10th Cir. 2017) (internal quotation marks and citations omitted)).

The arbitrary and capricious standard "focuses on the rationality of an agency's decision making process rather than on the rationality of the actual decision. . ." *Colo. Wild v. United States Forest Serv.*, 435 F.3d 1204, 1213 (10th Cir. 2006) (citation omitted); *see also Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1575 (10th Cir. 1994) (same). This standard of review is "very deferential" to the agency, and a "presumption of validity" attaches to the agency action such that the burden of proof rests with the party challenging it. *W. Watersheds Project v. Bureau of Land Mgmt.*, 721 F.3d 1264, 1273 (10th Cir. 2013) (internal quotation marks and citations omitted); *Aviva Life & Annuity Co. v. F.D.I.C.*, 654 F.3d 1129, 1131–32 (10th Cir. 2011) ("[T]he burden is on the party seeking review to establish that the challenged agency action is arbitrary or capricious.").[7]

---

[7] Courts outside the Tenth Circuit have reviewed decisions by boards for the correction of military records under "an unusually deferential application of the 'arbitrary or capricious standard[.]'" *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989); *see also Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000) ("This deferential standard is calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence."). The Court need not determine whether this "unusually deferential" standard applies here because Plaintiff has not met his burden to show the Board's action was arbitrary and capricious under the ordinary standard for judicial review of agency action.

9

However, "[i]t is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs.*, 463 U.S. at 50. As such, "the grounds upon which the agency acted must be clearly disclosed in, and sustained by, the record." *Olenhouse*, 42 F.3d at 1575.

## IV. Discussion

The Board is authorized to act on behalf of the Navy when "necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1); *see also* 32 C.F.R. § 723.1. The Board's regulations provide an application for correction of a military record must provide enough evidence to "demonstrate the existence of probable material error or injustice." 32 C.F.R. § 723.3(e)(2). The regulations further state that the Board "relies on a presumption of regularity to support the official actions of public officers and, in the absence of substantial evidence to the contrary, will presume that they have properly discharged their official duties." *Id.* If the Board denies an application, it must provide a statement of the grounds for denial that includes "the applicant's claims of constitutional, statutory and/or regulatory violations that were rejected, together with all the essential facts upon which the denial is based, including, if applicable, factors required by regulation to be considered for determination of the character of and reason for discharge." *Id.* § 723.3(e)(4).[8]

---

[8] The Court notes at the outset that Mr. Liles does not contend the Board failed to follow any statutory or regulatory procedure. *See* Brief [Doc. No. 21] at 1-10. In his "Second Amended Appeal," [Doc. No. 11] at 6, Mr. Liles briefly references "liberal construction" under 10 U.S.C. § 1552(h)(2)(B), but that provision applies in the context of a former servicemember whose claim is "based in whole or in part on matters relating to post-traumatic stress disorder or traumatic brain injury as supporting rationale, . . . and whose post-traumatic stress disorder or traumatic brain injury is related to combat or military sexual trauma. . ." *Id.* § 1552(h)(1). Mr. Liles has not explained how his case falls within the purview of § 1552(h)(1), and he abandons that reference in his briefing. *See* [Doc. Nos. 21, 29].

10

Mr. Liles principally relies on Secretary of Defense Memoranda from 2014, 2017, and 2018 that relate to applications by veterans claiming mental health conditions. *See* Pl. Brief [Doc. No. 21] at 2-10. The Board contends his reliance on the Memoranda is improper because they are policy statements that are not binding on it or a reviewing court. *See* Resp. [Doc. No. 27] at 22-23. Generally, "policy statements" like "guidances, manuals, circulars, memoranda, [and] bulletins" are "not binding on courts in reviewing agency actions . . . or the agency itself in establishing a violation." *Jake's Fireworks Inc. v. Acosta*, 893 F.3d 1248, 1262 (10th Cir. 2018); *see also Vietnam Veterans of Am. v. Sec'y of the Navy*, 843 F.2d 528, 536–39 (D.C. Cir. 1988) (finding a Secretary of Defense memorandum "ha[d] no binding effect"). Mr. Liles contends it would be unfair to not hold the military to the statements of its highest officer while he was discharged in part for failing to follow a lawful order—but he does not make any legal argument as to how the Memoranda are binding. *See* Reply [Doc. No. 29] at 1-2.

Even if they were binding, however, Mr. Liles has not developed an argument in relation to the Memoranda in the first place.[9] Moreover, the Board expressly stated that it

---

[9] Mr. Liles generically quotes the Memoranda but does not connect the quoted provisions to any factual or legal argument pertaining to the issues in his case. *See* Brief [Doc. No. 21] at 2-9. In the argument section of his brief, Mr. Liles references two provisions of the 2017 Memorandum, which state: (1) "[t]he veteran's testimony alone, oral or written, may establish the existence of a condition or experience, that the condition or experience existed during or was aggravated by military service, and that the condition [or] experience excuses or mitigates the discharge"; and (2) "[a]bsent clear evidence to the contrary, a diagnosis rendered by a licensed psychiatrist or psychologist is evidence the veteran had a condition that may excuse or mitigate the discharge." *Id.* at 8-9. But even there, he only re-quotes the Memorandum and does not explain the legal significance of his contention or otherwise develop an argument as to how it applies to the facts of his case. *See id.* Mr. Liles is represented by counsel and therefore not entitled to liberal construction of his pleadings, and the Court cannot develop his arguments for him.

11

considered all three Memoranda, A.R. [Doc. No. 19] at 10, and Mr. Liles has not shown anything about the Memoranda suggest the Board's decision was arbitrary and capricious. The provisions he quotes in his argument state that a mental health diagnosis from a licensed psychologist or psychiatrist (or the servicemember's own testimony) "may" excuse or mitigate a discharge characterization, but neither provision is dispositive. The Board expressly considered both kinds of evidence in Mr. Liles' case—it just ultimately disagreed with him based on other evidence such as the military record and the opinions of Lieutenant Summers. *See* A.R. [Doc. No. 19] at 10-11. Accordingly, it has not been shown that the Board failed to consider an important aspect of the problem or relevant factors; that its explanation runs counter to the evidence or is so implausible that it could not be ascribed to a difference in view; or that it made a clear error of judgment. *See WildEarth Guardians*, 870 F.3d at 1233.[10]

    Mr. Liles next argues the Board erred in relying on the opinions of Lieutenant Summers, although he acknowledges the Board followed its own guidance in seeking an advisory opinion. Brief [Doc. No. 21] at 7. Mr. Liles contends the Board's reliance on Lieutenant Summers' opinions is flawed because she has never met or evaluated Mr. Liles

---

[10] Mr. Liles relatedly asserts the Board "failed to adequately consider" the statements from him and his ex-wife, letters of support, a "mitigating criminal background check," or "the psychological reports provided to it," all contrary to the Memoranda. [Doc. No. 21] at 7. But as set forth, the Board expressly and thoroughly discussed its consideration of all relevant evidence, including his statements and the reports from Dr. Fuchs, and Mr. Liles wholly fails to explain what role he contends any additional evidence would have played, let alone how it connects to the Memoranda. *See id.*; *see also* A.R. [Doc. No. 19] at 9-11. As such, Mr. Liles' argument is more about a difference in view as to what evidence is persuasive rather than a showing that the agency failed to consider relevant evidence.

and she failed to fully evaluate Dr. Fuchs' opinions.[11]  *Id.* at 8.  As to the latter point, Mr. Liles objects to Lieutenant Summers' discussion of the "timeline"—i.e., Mr. Liles' misconduct prior to his wife's miscarriage, including formal counseling on three occasions, two-nonjudicial punishments, and a special court martial conviction.  *Id.*  His argument is conclusory and hard to follow, but he appears to suggest Lieutenant Summers and the Board failed to consider his and Dr. Fuchs' "narrative[s]" that he was assaulted by fellow Marines, which may have caused or contributed to the mental health conditions Dr. Fuchs diagnosed.  *See id.* at 8-9.[12]

As with other contentions, Mr. Liles does not develop his argument with any degree of detail.  *See id.*  Nor does he connect these contentions to any authority or legal argument.  *See id.*  In any event, the Board specifically noted that Dr. Fuchs diagnosed "specified trauma and stress related disorder related to physical assault in military service" and that Mr. Liles stated he was "physically and emotionally attacked. . ." A.R. [Doc. No. 19] at 10-11.  However, the Board ultimately concurred with Lieutenant Summers that there was

---

[11] As to his first point, Mr. Liles cites no requirement that the person rendering an advisory opinion meet or evaluate the applicant in-person.  As such, he impermissibly challenges the weight of Lieutenant Summers' opinions, rather than any flaw in the decisionmaking process.  *See Pennaco Energy, Inc. v. U.S. Dep't of Interior*, 377 F.3d 1147, 1159 (10th Cir. 2004) ("On review of an agency's decision, th[e] court's 'function is not to weigh the evidence or evaluate the witnesses' credibility.'" (quoting *Sorenson v. Nat'l Transp. Safety Bd.*, 684 F.2d 683, 685 (10th Cir. 1982))).

[12] In connection with his diagnosis of "Specified Trauma and Stress-Related Disorder," Dr. Fuchs noted "Physical Assault Military Service."  A.R. [Doc. No. 19] at 35.

insufficient evidence to attribute Mr. Liles' misconduct prior to his wife's miscarriage to a mental health condition.[13]  *Id.*

Accordingly, even if he had properly developed an argument, the record negates Mr. Liles' contention that the Board failed to consider his descriptions of assault he experienced in the military or Dr. Fuchs' diagnosis of Specified Trauma and Stress-Related Disorder in relation to physical assault.  *See id.* at 10-11.  The Board ultimately found there was not sufficient evidence to connect Mr. Liles' numerous instances of misconduct to a mental health condition, except possibly his final conviction by summary court martial.  *See id.* at 11.  That finding turned on the Board's concurrence with Lieutenant Summers rather than Dr. Fuchs, *see id.*, and the Court may not "displace the agency's choice between two fairly conflicting views," even if it "would justifiably have made a different choice had the matter been before [it] de novo.'"  *Fabrizius v. Dep't of Agric.*, 129 F.4th 1226, 1247 (10th Cir. 2025) (internal quotation marks and citation omitted); *see also Wyoming Farm Bureau Fed'n v. Babbitt*, 199 F.3d 1224, 1239 (10th Cir. 2000) (same).

Mr. Liles disagrees with the Board's determination, but he has not shown it failed to consider relevant information; that its explanation runs counter to the evidence or is so implausible that it could not be ascribed to a difference in view; or that it otherwise made

---

[13] As explained above, after receipt of Dr. Fuchs' report and diagnoses, Lieutenant Summers acknowledged Mr. Liles "has a trauma related mental health diagnosis that can be attributed to military service."  *Id.* at 8.  She went on to state, however, that "there is no clinical information submitted regarding his misconduct and military service."  *Id.*  She then noted Mr. Liles was "determined to experience characterological traits [while in service] which likely interfered with his ability to realistically consider his own behavioral role in the disciplinary proceedings."  *Id.*

a clear error of judgment. *See WildEarth Guardians*, 870 F.3d at 1233.[14] Upon thorough review of the record, the Court finds the Board "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs.*, 463 U.S. at 43. For all these reasons, the Court finds the Board's decision was not arbitrary and capricious.

## V.     Conclusion

For the reasons set forth, the Court AFFIRMS the decision of the Board for the Correction of Naval Records and DISMISSES this action. A separate judgment shall be entered contemporaneously herewith.

IT IS SO ORDERED this 21st day of May, 2025.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE

---

[14] As a final matter, the Court notes that Mr. Liles makes a passing objection to the fact that the Board primarily referred to its previous actions when it issued its decision on his reconsideration request. *See* [Doc. No. 21] at 7. This hardly bears mentioning because Mr. Liles cites no authority and fails to develop any legal argument on this issue. *See id.* In any event, his only objection regarding the Board's reference to its prior discussion is that it relates to "determinations . . . based on an incorrect timeline . . . by Lieutenant Summers," which the Court has addressed above. Accordingly, Mr. Liles has not shown the Board's reconsideration was arbitrary and capricious.